GRELL *v.* STATE TAX COMMISSION
HOLLOWAY *v.* STATE TAX COMMISSION
KENNEL *v.* STATE TAX COMMISSION
OLSON *v.* STATE TAX COMMISSION

Orval N. Thompson, and John S. Horton, Albany,
tried the cause for plaintiffs. On the briefs were John

S. Horton, and Weatherford, Thompson & Horton, Albany.

Gerald F. Bartz, Assistant Attorney General, Salem, tried the cause and filed a brief for defendant.

Decision for plaintiffs rendered January 31, 1964.

Addendum to decision entered March 3, 1964.

PETER M. GUNNAR, Judge.

These four suits are consolidated for trial and decision. They present the same fundamental legal question and their operative facts vary only as to the parties and amounts involved. In each case, plaintiffs seek to set aside a commission Opinion and Order sustaining an additional assessment of income tax against them for the year in question. The cases are presented upon a combined stipulation of facts and combined briefs.

Plaintiffs in each case are the owners of farm real property in Linn County, Oregon. Under the power of eminent domain, the State of Oregon, acting through its State Highway Department, took strips of land running through plaintiffs' farms for the purpose of relocating U.S. Highway 99, now Interstate Highway 5. As a part of each taking, plaintiffs were denied direct access from one severed part of their farm to the other across the highway right-of-way. In each case, since the state and the plaintiffs could not agree upon the proper sums to be paid for the land taken and the damages to the remainder, the state instituted condemnation actions, in which verdicts determined the just compensation to which plaintiffs were entitled. The circuit court instructed the jury in each case to bring in lump sum

verdicts for the value of the land and the damages to the remainder. In each case, there was conflicting testimony concerning the amounts to be allocated to these items. In no case did the highest value of the land taken which was supported by creditable testimony even approximate the total jury award. In each case the jury brought in a lump sum verdict.

In preparing their income tax returns, the respective plaintiffs reported as the purchase price of the land condemned the highest value placed upon that land by the valuation witnesses at the trial, and treated the remainder of the award as damages to the remaining severed lands. The commission rejected this treatment. It claimed that the whole award in each instance was the amount received for the land taken, and that plaintiffs' capital gain in each case was the difference between their basis in the land taken and the total jury award. From the commission Opinion and Order sustaining this position in each case plaintiffs have separately appealed to this court.

Plaintiffs contend that the commission orders should be set aside because (1) they are based on a misinterpretation of the U. S. Treasury Department rules and regulations, (2) they are unconstitutional, (3) they are unreasonable, discriminatory, and therefore invalid, (4) they are not supported by the evidence, and (5) they reflect an inaccurate interpretation of the rules and regulations of the State Tax Commission. Because the evidence in these cases is stipulated, the fourth contention raises a question of law, not fact. Since there are no rules and regulations of the State Tax Commission directly in point, any issue respecting the conformity of the orders to

rules and regulations of the State Tax Commission is moot. The constitutional question need not arise unless the orders are a proper interpretation of appropriate Oregon statutes. Therefore, the first and determinative question is whether or not the commission's orders properly interpret the Oregon statutes.

■■■ Defendant's position is that there can be no allocation of an award between the amount paid for the land taken and the amount paid as severance damages to the remainder because no segregation or allocation was made by the jury. In taking this position, the commission is interpreting the general income statutes, particularly ORS 316.105, as there is no more specific statute. The commission's position is founded upon its interpretation of a line of federal cases and the federal regulations. This court is not bound by the federal regulations, except possibly to the extent that they are a part of the statute at its adoption. *School Dist. No. 1 v. Rushlight Co.*, 232 Or 341, 345, 375 P2d 411 (1962); *State v. Burke et al*, 126 Or 651, 677, 269 P 869, 270 P 756 (1921). On the other hand, federal regulations and federal cases interpreting a substantially identical federal statute are instructive in the interpretation of an Oregon statute. *Kuhns et ux v. State Tax Com.*, 223 Or 547, 557, 355 P2d 249 (1960). The federal regulations and administrative interpretations dealing with allocation of condemnation awards are, by and large, merely reflective of federal cases. In this circumstance, this court will rely upon the federal decisions themselves and its own interpretation of them in the light of the circumstances of the case before it, rather than upon the interpretation by treasury department lawyers

who dealt with cases of differing and varying factual situations.

■ The bulk of the federal cases upon which the commission relies dealt with conveyances under threat of condemnation and did not allow segregation of severance damages from land purchase price because the contracts or agreements provided for a lump sum consideration. The rationale of most of these conveyance cases rests upon an application of the parol evidence rule. *Greene v. U.S.*, 3 AFTR2d 1461 (N. Dist. Ill. 1959); *Claude B. Kendall,* 31 TC 549 (1958); *O. N. Bymaster,* 20 TC 649 (1953); *Estate of Jacob Resler,* 17 TC 1085 (1952); *Marshall C. Allaben,* 35 BTA 327 (1937); *Ridge Road Investment Corp.,* P-H TC Memo 44,070 (1944). Each of these cases was discussed in *Wassom v. Commission,* 1 OTR 468, which this court entered earlier this day. In that decision this court held that, if there was severance damage in fact, if both parties acknowledged the existence of such damage as an element of the award during their negotiations, and if the contract provided for a lump sum consideration, the lump sum award could be allocated for income tax purposes between its various elements, including damages, without violating the parol evidence rule, despite the integration of the agreement of the parties. This court reached this conclusion only after a thorough study and consideration of the federal cases upon which the commission relies. The evidence in the instant cases establishes that substantial severance damage occurred in fact from the taking, that there was testimony from each valuation witness to this effect, and that the court instructed the jury to return a verdict for an amount including damages to the remainder and in a lump sum. Under these

facts so analogous to *Wassom v. Commission, supra,* the parol evidence rationale would appear to have no more application than it did in the *Wassom* case.

■ The remainder of the federal cases which consider conveyances under threat of condemnation and which deny allocation of a lump sum award for tax purposes are based upon the theory that the lump sum consideration represents the value of the land only because the value of any land intrinsically includes its worth in protecting and connecting surrounding land in the same ownership. *Lapham v. United States,* 178 F2d 994, 38 AFTR 1255 (CCA 2, 1949); *Alvin S. Norby,* 20 TCM 1077, TC Memo 1961-219, Dec. 24, 965 (M) (1961). (This latter case involved a condemnation action which was finally compromised by an agreement in compromise of appeal after verdict rendered.) This court considered this theory also in the above-cited *Wassom v. Commission, supra,* and determined that it was inapplicable in Oregon.

There appear to be only four federal cases dealing with lump sum jury awards. In two of these the court found no evidence that there was, in fact, any severance damage. *Alvin S. Norby, supra; Seaside Improvement Co. v. Commissioner of Int. Rev.,* 105 F2d 990, 23 AFTR 293 (CCA 2, 1939). In a third case, *Christian Ganahl Co. v. Commissioner of Internal Rev.,* 34 BTA 119 (1936), rev'd 91 F2d 343, 19 AFTR 1114 (1937), the severance damages were stipulated and the issue before the court was not the treatment of unallocated severance damages but rather the proper treatment of a special assessment deducted from the award. Only the fourth case appears to be applicable to this case.

In *Estate of Edgar S. Appleby,* 41 BTA 18 (1940), the taxpayer offered evidence of the proper break-

down of a lump sum jury award but, relying upon
*Marshall C. Allaben, supra,* a case dealing with a con-
veyance under threat of condemnation, the Board of
Tax Appeals held that the failure of the jury to segre-
gate the award between damages and land price pre-
cluded the treatment of any of the award as damages
for tax purposes. As noted above, *Marshall C. Allaben*
rests upon a rationale invoking the parol evidence
rule. Since the *Estate of Edgar S. Appleby, supra,*
relies upon the *Allaben* case, since this court has held
in *Wassom v. Commission, supra,* that the rule of the
*Allaben* case does not apply in Oregon if certain facts
are found, and since the facts of these instant cases
are analogous to those of the *Wassom* case, as noted
above, *Estate of Edgar S. Appleby, supra,* has no
application to the instant cases.

██ Furthermore, it is clear that the parol evi-
dence rule cannot be applied to a jury award in the
same manner that it is applied to a contract. This is
true because a contract is consensual in nature while a
jury award is nonconsensual. The rule that parol
evidence cannot be introduced to alter the terms of
an integrated agreement does not, and should not
prohibit the introduction of evidence to explain a jury
award, so long as it does not alter that award. 32
CJS 800, Evidence, § 870.

██ Actually, the application of the parol evi-
dence rule to jury verdicts has an effect opposite to
that contended by the defendant. With respect to ver-
dicts, the parol evidence rule has been invoked to pro-
hibit a showing that the verdict did not contain the
elements of damage which were properly raised by the
pleadings and evidence. *Butler v. Maas,* 163 Or 201,
210, 94 P2d 1116 (1939); *Underwood v. French,* 6 Or
66, 70-1 (1876). In *Underwood v. French, supra,* Mr.

Justice WATSON stated the rule in two sentences as follows:

> "* * * To admit parol evidence to show that what is clearly shown by the record to have been in issue was not in fact tried, would be to contradict the record by parol evidence. ('Citation omitted)
>
> "Parol evidence is admitted to identify the subject-matter, where an inspection of the whole record leaves it doubtful whether the same subject-matter was passed upon (citation omitted), but not to contradict the record where it is not doubtful."

As applied to the instant cases, the parol evidence rule would not preclude plaintiffs from showing that the jury verdict included the element of damages to the remainder, since that issue was raised by the pleadings and included in the court's instructions. The parol evidence rule would preclude the defendant from showing that this element was not included in the verdict.

 The other rationale of the conveyance cases —that a lump sum price cannot be allocated after the execution of an integrated agreement "because what the seller actually received is what he has realized on the disposal of it [the land conveyed] by sale"—likewise has no application to a jury award in Oregon. As pointed out in *Wassom v. Commission, supra,* the meaning of this language is that there really is no such thing as damage to a remainder, but rather that the purchase price of land itself reflects its value to adjacent land. Such rejection of the concept of damage to the remainder is contrary to the established law of this jurisdiction. What constitutes just compensation is a judicial question, not a legislative one.

*Chapman v. Hood River,* 100 Or 43, 196 P 467 (1921). It can no more be altered by tax statutes than it can by eminent domain statutes. The constitution guarantees it as it is defined by the courts. Our Supreme Court has consistently held that, where part of a tract is taken, the measure of damages for the taking is the actual cash market value of the land condemned plus the depreciation, if any, in value of the remaining land not taken. *State Highway Com. v. Burk et al,* 200 Or 211, 248-9, 265 P2d 783 (1954). To deny the existence of the element of damage to the remainder for tax purposes when the law in this state expressly recognizes this element as a part of a proper condemnation award and when the evidence in the case clearly establishes the severity of that damage in fact is not only illogical and unwarranted, but well might render such interpretation unconstitutional. Thus, neither rationale of the federal conveyance cases as interpreted by the commission is applicable to jury award cases in Oregon.

■ Defendant's final contention is that plaintiffs have lost their rights to treat any part of the awards as damages because there is no evidence establishing the parts of the respective awards which the juries actually determined to be damages for depreciation to the remainders, because the taxpayers could have determined these amounts by obtaining special jury findings, and because, by failing to seek such special findings, they cannot establish the exact determinations of the juries. This reasoning contains two basic flaws. In the first place, there was not in 1958, and is not now, anything in the Oregon statutes or the commission's regulations which requires a taxpayer to obtain such special finding before he can obtain the proper allocation of the award for tax purposes.

The commission seeks to sustain this requirement after the fact by relying upon its interpretation of the federal cases; but as pointed out above and in *Wassom v. Commission, supra,* the federal rule, even if it were as the commission contends that it is, is based upon two rationales not applicable to jury awards in this state.

Secondly, although the decisions of the Oregon Supreme Court do not absolutely prohibit a jury from making special findings as to depreciation of the remainder, they clearly discourage any competent counsel from seeking such findings for fear of error which would invalidate a favorable award, his primary objective in the condemnation suit. In *Pape et al v. Linn County,* 135 Or 430, 436, 296 P 65 (1931), while discussing the various elements of damage in a condemnation award, the court quoted an Iowa decision to the effect that "* * * The damage is to the farm as a whole and must be awarded in a lump sum. * * *" As recently as 1957, in *State Highway Com. v. Bailey et al,* 212 Or 261, 281, 319 P2d 906, the Supreme Court quoted with approval a jury instruction from an earlier Oregon case:

> "An excellent instruction covering the rule as to value of the land taken, and the rule concerning the remainder, was given by the trial court and approved by this court in *Portland & O. C. Ry. Co. v. Sanders,* 86 Or 62, 167 P 564, as follows:
>
>> " 'In a case of this sort there are only two questions for you to determine. The first is the reasonable market value of the strip of land taken, * * *. The second is the amount of damages to the remaining land which is caused by the taking of this strip. * * * the total amount would constitute your verdict in this case.' "

On page 283, the court continued:

> "We have held that it is unnecessary for the jury to make special findings as to the amounts of damages and benefits. *Beekman v. Jackson County, supra.* To require such separate findings would unduly complicate the task of a lay jury whose only duty is to determine '(1) the value of the land taken, and (2) the depreciation in value of the residue. * * *"

In the early case of *Beekman v. Jackson County,* 18 Or 283, 287, 22 P 1074 (1890), the court stated:

> "* * * I do not think the jury should have been required to state separately in their verdict the amount of the damages and of the benefits, as insisted upon by appellant's counsel. That is not required under the statute, * * *. It would undoubtedly be a wholesome regulation if juries were required in all such cases to state in their verdict the amount of damages and benefits separately, * * * but it will require legislation upon the subject before such a regulation can be adopted. * * *"

In *State Highway Com. v. Burk, supra,* 200 Or at page 251, the Oregon Supreme Court held:

> "We conclude that, except perhaps under extraordinary circumstances, when actions are brought for condemnation of land, which are triable before a jury, that body should return a verdict in a single lump sum, representing the fair market value of the land taken, and the net depreciation, if any, of the part not taken. * * *"

When confronted with the foregoing pronouncements of the Oregon Supreme Court, a competent trial attorney would indeed fear error if he sought a segregated verdict or special findings in a condemnation action. To require the plaintiffs to place their

condemnation recovery in jeopardy of reversal in order to segregate the awards for the purpose of obtaining the tax treatment to which they are entitled is unrealistic and far too onerous a requirement to be justified in these cases.

In the instant cases this conclusion is further buttressed by the actual form of verdict submitted by the trial court to the jury. It called for a lump sum verdict. The court's instructions contemplated a lump sum verdict. Whether the learned trial judge would have invited reversal by honoring a request for special findings in the face of the foregoing pronouncements of the Supreme Court does not appear from the record, and this court assumes that he would not.

Therefore, since the federal conveyance cases and the federal jury award case based on them are clearly inapplicable to jury awards in Oregon, and since to require segregation by the jury as a condition for separate tax treatment is patently unreasonable in view of the above-quoted Oregon condemnation decisions, we are left with the application of Oregon statutory and case law to the facts of these cases. As noted earlier, no Oregon statute bears directly on these cases. Similarly, there are no Oregon cases in point. There remain only the pertinent facts of each case and the proper inferences and presumptions to be drawn from these facts in deciding these cases. The facts in each case were: There was a partial taking for a limited access highway; there was damage to the separated remainders because plaintiffs could not go from one severed parcel of land to the other over the highway directly but were required to go some distance to a public crossing; and though the testimony of the expert witnesses on value varied, no witness on value in any case testified that the land

value, without the damages to the remainder, even approached the entire award. In fact, in no case did the highest land value testified to by any value expert exceed 81 per cent and in two of the four cases it was below 50 per cent.

■ In determining the value of the land in question in each case the jury did not assign to the land taken any higher value than that for which there was supporting testimony. This court reaches this conclusion by presuming that the jury faithfully performed its duty. *Sedillo v. City of Portland,* 234 Or 28, 33, 380 P2d 115 (1963); *State v. Reed,* 52 Or 377, 389, 97 P 627 (1908).

■ The trial court instructed the jury to find the just compensation for the taking which it defined as the total of the value of the land taken plus the amount of depreciation of the remainder, or the difference in value of the plaintiffs' lands before and after the taking. Both of these measures of the injury reach the same figure. Whichever measure the jury used, it included the depreciation of the remaining land. Again this court will presume that the jury properly performed its trust and followed the court's instructions. *Sedillo v. City of Portland, supra; State v. Reed, supra.* The total award in each case was substantially in excess of the highest testimony as to the value of the land. This court will not infer that the jury found the value of the land taken to be any higher than the highest value which is supported by some competent evidence. Rather, this court will infer that, following the court's instructions, the jury found that the damages to the remainder were in an amount at least equal to the difference between the highest land value for which there is supporting testimony and the amount of the total award. This is the

amount which the plaintiffs claim in each case as the amount which should not be subject to tax at this time. While this amount could be inaccurate, it could only err on the side of subjecting to tax more than the actual amount determined to be in payment for the land taken. This error, if one there be, benefits the revenue of the state and the defendant commission should not be heard to complain because the amount upon which tax is being paid willingly by plaintiffs may exceed the amount to which the state actually would be entitled, could a more accurate determination of the jury's finding be produced.

To hold that the plaintiffs may use their method of determining the maximum taxable income arising from the award without violating a proper application of the parol evidence rule is not in conflict with those federal cases which actually have passed upon the taxability of lump sum jury awards in partial taking cases and which have not applied unquestioningly a rationale of the conveyance cases. There are only two such cases. In both instances, the court's decision sustained the position of the commissioner, but the basis of those decisions was not that the taxpayer was prohibited from showing the evidence introduced in the condemnation proceedings to prove his case, as has been done here, but rather that the taxpayer had failed to prove any damage to the remainder in fact. *Seaside Improvement Co. v. Commissioner of Int. Rev., supra; Alvin S. Norby v. Commissioner, supra.*

Furthermore, as discussed in *Wassom v. Commission, supra,* two of the most recent federal decisions in conveyance cases do not require express segregation if the mind of a reasonable person cannot, in fact, deny the inclusion of severance damages in the

contract amount. *Green, Jr. v. U.S.,* 6 AFTR2d 5431 (1960); *L. A. Beeghly,* 36 TC 154 (1961). These decisions and the more complete analysis of the other federal cases in the *Wassom* decision negate any federal application of so inflexible a rule as that proposed by the commission.

In three of the four instant cases there was testimony as to some minor crop damage. Under plaintiffs' theory this too would reduce the severance damages by the highest amount thereof supported by competent testimony. In approving their theory, the court assumes that this is done.

■ In summation, this court holds that where, as here, the trial court in the condemnation action has instructed the jury to find such damages, if any, as were caused to the remaining land by the taking and where, as here, the taxpayer shows the highest value supported by any valid testimony and claims only the difference between that amount and the total award, less crop damage, if any, as damages to the remainder for tax purposes, the taxpayer is entitled to rely upon a presumption that the jury performed its duty properly and to treat such amount as nontaxable damages to the remainder, reducing his basis in the remainder by the amount thereof.

A decree will be prepared under Rule 32 in each case allowing the deduction of the amount discussed above from the condemnation award in determining the price paid for the land taken.

## ADDENDUM TO DECISION

Following entry of the decision herein, defendant moved for a clarification of the decision on the ground that it was not clear whether the part of a jury award or contract price allocable to the taking of the land,

as distinguished from damages, included land alone or land and improvements. Although the court questions the existence of an ambiguity, it adds this clarifying addendum at the request of the commission.

 Under this decision that part of a jury award equal to the highest value of the land and improvements supported by competent evidence is deemed the purchase price of the land and improvements. The remainder is payment of damages for injury to the remaining land and improvements, reduced, if appropriate, by the highest amount attributable to crop damage supported by competent evidence, if any there be.